IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLIAM O. ARREDONDO, JR.                                              PLAINTIFF

v.                    Civil No. 04-5197

JEFF BLAND, Parole Officer, Department
of Community Corrections; KEITH
FERGUSON, Sheriff, Benton County,
Arkansas; and CAPTAIN HUNTER
PETRAY, Benton County Sheriff's Department/
Benton County Detention Center                                         DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

William O. Arredondo, Jr., a former inmate of the Benton County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Arredondo contends his constitutional rights were violated in the following ways: (1) his parole officer, Jeff Bland, intentionally planted a knife in Arredondo's car in order to revoke his parole; and (2) Bland, Sheriff Ferguson, and Captain Hunter Petray prevented Arredondo from corresponding with, talking with, or having visits from his girlfriend, Sybil Goff, while he was an inmate at the Benton County Detention Center.

On March 7, 2005, separate defendants Sheriff Keith Ferguson and Captain Hunter Petray filed a motion for summary judgment (Doc. 21). That same day, Jeff Bland also filed a motion for summary judgment (Doc. 24). By order entered on April 20, 2005 (Doc. 35), Arredondo was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motions. On July 27, 2005, plaintiff's response to the court's

questionnaire (Doc. 46) was filed. The summary judgment motions are currently before the undersigned for issuance of this report and recommendation.

## I. BACKGROUND

On April 22, 2003, Arredondo was sentenced to a term of imprisonment. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 1. On March 11, 2004, he was paroled from the Arkansas Department of Correction (ADC). *Id.* at ¶ 2. His parole was contingent upon him abiding by various conditions or terms of parole. *Id.* at ¶ 3. The conditions of his release were set forth in an order of conditional release dated March 11, 2004. *Id.*

On May 18, 2004, Arredondo's wife, Dorothy, informed law enforcement officers that Arredondo had gotten into an altercation with her. *Resp.* at ¶ 4. According to Arredondo, Dorothy lied and said he hit her and also told Jeff Bland, his parole officer, lies about him selling drugs. *Id.* A week later, Arredondo contends Dorothy wrote a letter to Bland stating that Arredondo had never touched her and she had lied. *Id.*

Arredondo was arrested on May 18, 2004, and charged with third degree assault on a family or household member. *Resp.* at ¶ 5. Arredondo had been ordered by the court to stay away from his wife. *Id.* at ¶ 6. However, Arredondo states Bland had also ordered him to stay at his residence of parole which was upstairs from his wife not more than twenty feet away. *Id.*

Arredondo was released on May 26, 2004, and instructed, by Bland, to follow all parole conditions to avoid revocation proceedings. *Resp.* at ¶ 7. On June 9, 2004, Arredondo was in Bland's office. Bland contends the appointment was regarding additional alleged parole

violations. *Bland's Ex.* C at ¶ 5. Arredondo contends he was there for his monthly visit. *Resp.* at ¶ 8. Sybil Goff, Arredondo's girlfriend, went with him to the parole office. *Id.* at ¶ 22.

Bland had the right to search Arredondo's vehicle. *Resp.* at ¶ 9. During this visit, Bland elected to search Arredondo's vehicle. While Bland was searching the vehicle, Arredondo states Bland made Goff get out of the car and go into the office. *Id.* at ¶ 22. During the search, Bland maintains he discovered a lock blade Smith and Wesson SWAT knife located under the front passenger seat of Arredondo's car. *Bland's Ex.* C at ¶ 6.

Arredondo disagrees. *Resp.* at ¶ 10. According to him:

> When the altercation suposedly happened with my wife . . ., my wife broke all the windows out of my Lincoln town car and before I went to the parole office me and Sybil Goff vacumed under all my seats and looked through my car to make sure my wife had not tried to set me up. My car was tottaly free of any ilegal stuff including a knife. I belive Mr. Bland placed the knife there.

*Resp.* at ¶ 10.

Arredondo told Bland the knife was not his. *Resp.* at ¶ 10. According to Bland, Arredondo admitted that he had stayed away from his approved residence overnight without permission and that he had used marijuana on multiple occasions after his release from jail on May 26, 2004. *Bland's Ex.* C at ¶ 7.

According to Arredondo, he didn't know what to do. *Resp.* at ¶ 12. He states he was told by the court not to go within 500 feet of his wife but he was told by Bland to stay at his residence which was only 20 feet away. *Id.* Arredondo maintains his wife was harassing him because she thought she was going to get him back. *Id.*

-3-

Bland arrested Arredondo on June 9, 2004, and he was booked into the Benton County Detention Center (BCDC) that day. *Resp.* at ¶ 23. The arrest was based on Arredondo's violating a number of the conditions of his parole. *Bland's Ex.* C at ¶ 8.

Arredondo states that Bland offered to let Arredondo go if he would tell Bland about the alleged drug activity Arredondo's wife had told Bland about. *Resp.* at ¶ 13. When Arredondo replied that he had no clue what Bland was talking about, Arredondo states Bland said he could not help Arredondo then. *Id.*

Bland told staff at the BCDC not to allow Arredondo to have any contact with Sybil Goff since she was a witness to the parole violation and would be used as a witness at the parole revocation hearing. *Resp.* at ¶ 24. Arredondo contends Goff was his character witness and was his only way to have contact to the world including his lawyer. *Id.* Arredondo contends Bland did not want Arredondo to have contact with Goff because she was helping him after he filed the lawsuit against Bland. *Id.*

Acting on Bland's advice, detention center staff, for a period of time, restricted Arredondo's contact with Goff but Arredondo was allowed to receive mail, phone calls, and visits from everyone else. *Resp.* at ¶ 25. On July 1, 2004, he submitted a grievance stating that his girlfriend had been denied visitation, he could not receive phone calls from her, and he was not allowed to get her letters. *Id.* at ¶ 26.

On July 2, 2004, Captain Petray responded that pursuant to Ark. Code Ann. § 16-93-706 his parole officer could do this. *Resp.* at ¶ 27; *Ferguson's Ex.* 3. According to Arredondo, he researched this statute and it does not state that his parole officer can have his mail, visits, and phone calls denied. *Id.* Arredondo states this is especially true for a character witness. *Id.*

AO72A
(Rev. 8/82)

On July 1, 2004, Arredondo submitted a grievance in which he stated that his parole officer had searched his car with no witness present. *Resp.* at ¶ 28. Arredondo stated Bland found a knife and Arredondo asked for the knife to be fingerprinted and Bland refused the request. *Id.* Arredondo stated if the knife was fingerprinted it would show he had never possessed the knife. *Id.* Captain Petray responded by stating that Arredondo needed to contact his attorney.

On July 14, 2004, Arredondo signed a waiver of parole revocation hearing. *Resp.* at ¶ 14. In the waiver, Arredondo admitted to violating the following conditions of his parole: #3 residence; #6 alcohol/controlled substances; and #7 association with a convicted felon. *Id.* at ¶ 15. Arredondo states he signed the waiver so he could go to a sixty day program for technical violators instead of doing a six month violation. *Id.*

Arredondo did not admit to having violated condition #5 which involves the ownership, possession, or use of a weapon. *Resp.* at ¶ 16. The charge of violating condition #5, weapons, was dismissed. *Id.* at ¶ 17. Arredondo believes Bland dropped this charge because of the civil suit and because he did not want to be held liable for planting the weapon in Arredondo's vehicle. *Id.*

Arredondo states he was sent to the "TVP [Technical Violators' Program] drug program" and was not sent down on a six month parole violation. *Resp.* at ¶ 19. He indicates he wanted out as soon as possible. *Id.*

On July 30, 2004, Arredondo submitted a grievance about missing legal mail. *Resp.* at ¶ 30. He indicated Sybil Goff sent him legal mail about two weeks ago and he had not received it and she had not gotten it back. *Id.* Captain Petray responded by stating that he showed

-5-

numerous items of mail coming in from Sybil Goff. *Id.* at ¶ 31. Petray also stated that the detention center did not hold mail from inmates. *Id.*

The BCDC visitors' log shows Sybil Goff came to the BCDC to visit Arredondo on a number of occasions in June, July, August, and September.[1] *Ferguson's Ex.* 6. *See also Resp.* at ¶ 32 ( Arredondo indicates he is without knowledge to agree or disagree with the log). According to the mail log, Arredondo sent mail to Sybil Goff on June 10, June 15, June 21, June 28, July 19, July 20, July 26, July 28, July 30, August 2, and August 3, 2004. *Ferguson's Ex.* 7; *See also Resp.* at ¶ 33 (Arredondo indicates he is without knowledge to agree or disagree with the log).

According to the mail log, Arredondo received mail from Sybil Goff on June 14, June 18, June 23, June 25, June 30, July 19, July 22, July 27, July 28, August 2, and August 25th. *Resp.* at ¶ 34. Arredondo asserts he does not know the exact dates but Bland had his mail stopped for a period of time. *Id.* After the waiver was signed, Arredondo indicates Bland lifted the hold. *Id.*

Arredondo received mail from Sybil Goff and others while he was at the BCDC. *Resp.* at ¶ 35. He sent mail to Goff and others while at the BCDC. *Id.* at ¶ 36. Goff and others visited him while he was at the BCDC. *Id.* at ¶ 37.

Arredondo was released from the BCDC on September 21, 2004. *Resp.* at ¶ 38. Arredondo was transferred to the Benton Unit of the Arkansas Department of Correction on

---

[1] We note that it appears that Goff was at the BCDC for only extremely limited periods of time on a number of the dates listed on the log.

AO72A
(Rev. 8/82)

September 24, 2004. *Id.* at ¶ 20. He was paroled from the ADC on November 29, 2004. *Id.* at ¶ 21.

Arredondo never communicated, orally or in writing, with Sheriff Keith Ferguson while he was at the BCDC. *Id.* at ¶ 39. Arredondo believes Sheriff Ferguson violated Arredondo's rights by allowing BCDC employees to obstruct his mail. *Id.* at ¶ 40. Arredondo believes his rights were violated by Petray because he approved the return of Arredondo's mail and told him that a statute allowed the parole officer to obstruct mail. *Id.* at ¶ 41.

Arredondo believes his rights were violated by Bland's act of planting a knife in Arredondo's car. Additionally, Arredondo contends Bland violated the law when he obstructed Arredondo's mail at the BCDC. *Id.* at ¶ 42.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants have moved for summary judgment. We will address each of the plaintiff's claims separately.

*The Planted Evidence Claim*

Bland argues that even if he planted the weapon in Arredondo's car there is no constitutional violation because no injury was suffered. Bland points out Arredondo was sent back to the ADC for parole violations that he admitted to having committed.

Due process is violated if false evidence, including false testimony, is used to secure a conviction. *See e.g., Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)(noting that this principle is implicit in any concept of ordered liberty). *Cf. Wilson v. Lawrence County*, 260 F.3d 946, 954-955 (8th Cir. 2001)(noting the principle has been applied where a false statement has been used at probable cause and *Alford* plea hearings); *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999)("If Poletis lied in order to convince the mental health investigator to begin commitment proceedings, then his conduct violated a clearly established constitutional right because it is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause."). Similarly, the use of fabricated evidence to secure a conviction, affect the judgment of a jury, or initiate an indictment, arrest, and trial violates Due Process. *See e.g., Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997)("[The officer] would have violated [the plaintiff's] right to due process

AO72A
(Rev. 8/82)

if he knowingly fabricated evidence against her, and if there is a reasonable likelihood that the false evidence could have affected the judgment of the jury."); *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997)(two officers allegedly gave false testimony in official reports and provided false information that set in motion a series of events they anticipated would lead to indictment, arrest, and trial for a murder the plaintiff was ultimately acquitted of); *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988)(jury was entitled to find that had it not been for the misconduct of defendants in fabricating evidence and concealing exculpatory information that Jones would neither have been arrested nor charged).

In the prison context, it has been held that the filing of a false conduct or disciplinary report does not state an actionable claim under § 1983. *See e.g., Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983). Some courts have applied this same reasoning to the filing of violation report by parole officers. For instance, in *Threat v. Russi*, 784 F. Supp. 65 (W.D.N.Y. 1992)(*citing Freeman v. Rideout*, 808 F.2d 949, 952 (2d Cir. 1986) the court held that the deliberate filing of a false report against a parolee does not, by itself violate Due Process. However, false allegations that immediately interfere with substantive constitutional rights do constitute a constitutional violation. *See e.g., Taylor v. Sullivan*, 980 F. Supp. 697 (S.D.N.Y. 1997), *aff'd without op.*, 166 F.3d 1201 (2d Cir. 1998). In *Taylor*, the court held that the intentional filing of a false report that directly led to the issuance of a parole warrant and resulted in the first nine days of the plaintiff's incarceration could state a cause of action for a deprivation of the parolee's constitutional rights. *Id.* at 705.

In this case, we believe no cause of action is stated. Arredondo claims that only one of several violation charges was based on allegedly planted evidence. Arredondo does not argue

his arrest or his parole revocation was the result of the alleged weapons violation as opposed to the other parole violations. The violation charge based on the knife was dismissed and Arredondo waived the revocation hearing and pled to the remaining violations. The alleged planted evidence therefore cannot be said to have resulted in his arrest, his incarceration, or in the revocation. In short, Arredondo has made no showing that any harm resulted from the inclusion of the violation charge stemming from his alleged possession of the knife.

The court holds only that no claim of constitutional dimension is stated on the facts presented here. The court in no way condones the planting of evidence or the filing of false parole violation charges. Nor does the court find that Bland acted in such a matter. Instead, the court only finds that in view of the multiple parole violation charges made, and Arredondo's admission to having violated the terms and conditions of his parole, that Bland's alleged actions did not deprive Arredondo of a constitutionally protected liberty interest.

The revocation has not been reversed, expunged, or declared invalid. Therefore, any claim based on the actual revocation is barred by *Heck v. Humphrey*, 512 U.S. 477, 113 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994)(to recover damages for an allegedly unconstitutional conviction or imprisonment, or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus).

AO72A
(Rev. 8/82)

### *Interference with Mail & Other Contact with Goff*

In Bland's summary judgment motion, he gives little attention to this claim. In fact, Bland's affidavit does not address at all the issue of his having put a stop to Arredondo corresponding with Goff or having other contact with her. Instead, the brief asserts that it was believed that Arredondo, through his girlfriend, "was attempting to intimidate a witness in an unrelated matter, was attempting to continue correspondence with Derrick Fitch, the convicted felon Plaintiff had already admitted to having communicated with, and was possibly attempting to bring contraband into the detention facility." *Bland's Brief* (Doc. 25) at p. 5. This statement is not supported in anyway by Bland's affidavit, *Bland's Ex.* C, or the other exhibits submitted to the court.

Sheriff Ferguson and Captain Petray acknowledge that detainees have a First Amendment liberty interest right in sending and receiving mail. *Ferguson's Brief* (Doc. 22) at p. 1. They also acknowledge the rights cannot be denied or restricted except for purposes that are rationally related to the effectuation of legitimate non-punitive governmental/jail purposes. *Id.* at pps. 1-2.

They then argue their statement of indisputable materials facts and exhibits establish Arredondo did in fact receive mail and have visits from Goff and others. Thus, they contend Arredondo's constitutional rights were not violated.

Next, defendants maintain that at most their reliance upon, and following of, Bland's instructions, for any period of time, amounts to negligence. As liability under § 1983 cannot be premised on negligence, they contend they are entitled to summary judgment. Finally, Sheriff Ferguson argues there is no basis on which he can be held liable under § 1983.

AO72A
(Rev. 8/82)

Prisoners retain their constitutional rights to the extent those rights do not conflict with their status as prisoners and the legitimate demands of the prison system. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974). Among the rights guaranteed by the Constitution is the First Amendment's guarantee of the right to freedom of association.

In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989), the Supreme Court held that prisoners do not possess a substantive liberty interest arising under the Constitution in unfettered visitation. *See also Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)("A prisoner does not have a liberty interest in contact visitation). More recently in *Overton v. Bazzetta*, 539 U.S. 1043, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003), the Supreme Court noted that "freedom of association is among the rights least compatible with incarceration." *Id.* at 2167. It held that "[s]ome curtailment of that freedom must be expected in the prison context." *Id.* The Court, however, cautioned that it was not holding or implying that "any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.*

At issue in *Bazzetta* were regulations of the Michigan Department of Corrections that placed certain limitations on visits from family members, that prohibited inmates from visiting with former inmates, and that subjected inmates with two substance-abuse violations to a ban of at least two years on future visitation. The Court held these limitations were rationally related to legitimate penological objectives and did not violate substantive due process, or the free association guarantee of the First Amendment. The Court further held that the two year ban on visitation for inmates with two substance-abuse violations did not violate the Constitutional prohibition against cruel and unusual punishment. *See also Ware v. Morrison*, 276 F.3d 385, 387-388 (8th Cir. 2002)(Inmate "had no constitutionally protected interest implicated by the suspension of his visitation

-12-

privileges."); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (prison officials can reasonably limit prisoner's right to communicate with people outside prison when necessary to maintain security); *Smith v. McDonald,* 869 F. Supp. 918 (D. Kan. 1994) (finding no violation of prisoner's rights by denying visitation for five months with six-year-old son during seven month period of incarceration).

According to the BCDC visitors' log, Goff visited Arredondo on a number of occasions in June, July, August, and September. *Ferguson's Ex.* 6. While Arredondo indicates he is without knowledge to agree or disagree with this exhibit, *see Resp.* at ¶ 32, he does not argue the log is incorrect or invalid or that Goff did not visit him at the BCDC on the occasions indicated on the log. Additionally, he concedes Goff and others visited him while he was at the BCDC. *Resp.* at ¶ 37. Therefore, at most, Arredondo's visitation rights with respect to Goff were only limited for a period of time. Such a limited suspension of visitation rights involving only one individual Arredondo might desire to associate with does not implicate his liberty interests.

There is no per se constitutional right to use the telephone for personal calls. *See e.g., United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000). There is no right to unlimited phone use and restrictions may be placed on an inmate's right to use the telephone. *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989). The denial of the use of a telephone for limited periods of time, so long as it does not operate to deprive a detainee of all means of communication with persons outside the prison or deprive the detainee of access to the courts, does not violate the constitution. With respect to his access to a telephone, once again Arredondo contends only that for a period of time he was not allowed to use the telephone to call Goff. No claim of constitutional dimension is stated.

AO72A
(Rev. 8/82)

"Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977).

"Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001). Restrictions on this First Amendment right are valid "only if [they are (1)] reasonably related to legitimate penological interests," such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved. *Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct. 1874, 1881-82, 104 L. Ed. 2d 459 (1989).

In this case, although the BCDC log indicates Arredondo was allowed to send mail to Goff on numerous dates in June and July and he received mail from Goff on numerous dates in June and July, *see Ferguson's Ex.* 7, Arredondo contends his mail was stopped and he did not get any mail from Goff until after he signed the waiver of the parole hearing. *Resp.* at ¶ 34. Arredondo was incarcerated at the BCDC on June 9, 2004, *Resp.* at ¶ 13, and signed the waiver on July 14, 2004, *Resp.* at ¶ 14. Arredondo's contention his mail to, and from, Goff was blocked until July 14th is supported in part by the exhibits submitted by Sheriff Ferguson and Captain Petray.

-14-

Petray states in his affidavit that, acting on Bland's advice, BCDC staff restricted Arredondo's contact with Goff. *Ferguson's Ex.* 11 at ¶ 6. On July 1, 2004, Arredondo submitted an "emergency" grievance complaining of "blocked mail, visits, and phone calls." *Ferguson's Ex.* 3. Arredondo states Goff has not been allowed to visit, receive phone calls, or write him letters. *Id.* Petray responds that pursuant to "A.C.A. 16-93-706, your parole officer may do this." *Id.*

The statute cited by Petray provides as follows:

(a)(1) The Chairman of the Board of Pardons and Paroles or his designee, the hearing officer presiding over any preliminary hearing with respect to an alleged parole violation, the Administrator of the Board of Pardons and Paroles, or any member of the Board of Pardons and Paroles pursuant to the authority of the Board of Pardons and Paroles to meet and determine whether to revoke parole shall have the power to issue oaths and to subpoena witnesses to appear and testify and bring before the hearing officer or the board any relevant books, papers, records, or documents.

(2) The subpoena shall be directed to any sheriff, coroner, or constable of any county where the designated witness resides or is found. The endorsed affidavit thereon of any person of full age shall be proof of the service, which shall be served and returned in the same manner as subpoenas in civil actions in the circuit courts are served and returned.

(b) The fees and mileage expenses as prescribed by law for witnesses in civil cases shall be paid by the Department of Correction.

(c)(1) In case of failure or refusal by any person to comply with a subpoena issued under this section to testify or answer to any matter regarding which the person may be lawfully interrogated, any circuit court in this state, on application of the hearing officer or the Chairman of the Board of Pardons and Paroles, shall, in term or vacation, issue an attachment for the person and compel him to comply with the subpoena and appear before the hearing officer or the Board of Pardons and Paroles and to produce such testimony and documents as may be required.

(2) The circuit court shall have the power to punish any contempt, in case of disobedience, as in civil cases; or it shall be a misdemeanor for a witness to

> refuse or neglect to appear and testify, punishable upon conviction by a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500).
>
> (d) Any person willfully testifying falsely under oath before the Board of Pardons and Paroles, or at a preliminary hearing in which probable cause for parole revocation is to be considered, to any matter material to a lawful inquiry by the board or hearing officer, may be charged with perjury and upon conviction punished accordingly.

Ark. Code Ann. § 16-93-706 (1987).

As Arredondo points out, this statute does not appear to give Bland the authority to place limitations on Arredondo's right to send and receive mail or have other contact with family or friends. Nor does the statute appear to give Bland the authority to dictate to the BCDC how its rules regarding visitation, telephone usage, and mail should be applied to detainees in its custody.

In any event, it appears from the record before us that Arredondo's mail to, and from, Goff was blocked until sometime in July. We believe genuine issues of fact exist as to whether Petray and/or Bland violated Arredondo's First Amendment rights.

With respect to Sheriff Ferguson, however, we find there is no genuine issue of material fact as to whether he can be held liable for any alleged constitutional violation. A supervisor may not be held liable for a section 1983 violation on the basis of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Arredondo has not alleged that Sheriff Ferguson directly participated in the alleged constitutional violations or that a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996) (*citing Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or

responsibility). Further, the record in this case is devoid of any suggestion of the existence of a custom or policy on which to hold Benton County liable. In short, there is nothing to suggest Arredondo's alleged constitutional deprivation was caused by a custom or policy of Benton County.

## IV. CONCLUSION

I therefore recommend that defendants' motions for summary judgment be granted in part and denied in part. Specifically, I recommend as follows: (1) Bland's motion for summary judgment be granted as to the claims that he violated Arredondo's constitutional rights by planting a weapon in Arredondo's car, interfering with Arredondo's visitation rights, and interfering with Arredondo's telephone usage; (2) Bland's motion for summary judgment be denied on the claim that he interfered with Arredondo's mail; (3) Sheriff Ferguson's motion for summary judgment be granted and Sheriff Ferguson be dismissed from this lawsuit; and (4) Captain Petray's motion for summary judgment on the claim that he interfered with Arredondo's mail be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of September 2005.

/s/ Beverly Stites Jones
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)